```
         UNITED STATES DISTRICT COURT
       SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

SCOTT LEGG,

      Plaintiff,

v.                                              Civil Action No. 2:22-cv-00111

WRIGHT GROUP, LLC, and ASHLEY
MONIQUE WRIGHT,

      Defendants.


## MEMORANDUM OPINION AND ORDER

Pending before the court is the parties' Joint Motion for Approval of Settlement, filed March 22, 2023. ECF No. 20. Attached to the motion is a Settlement Agreement and Release entered into between the parties to this action. ECF 20-1.

Plaintiff Scott Legg filed this case on February 28, 2022, seeking unpaid overtime and minimum wages under the Fair Labor Standards Act, 28 U.S.C. § 201, et seq., ("FLSA" or the "Act"), from Dem 2 Brothers and a Grill II and Adrian Wright. Compl., ECF No. 1. On May 16, 2022, Mr. Legg filed his First Amended and Substituted Complaint, substituting Wright Group, LLC and Ashley Monique Wright (the "defendants") for Dem 2 Brothers and a Grill II and Adrian Wright. Am. Compl., ECF No. 7.

Mr. Legg's amended complaint consists of a single count alleging that the defendants failed to pay overtime and minimum wages in violation of 29 U.S.C. §§ 206 and 207 of the Act.  See id. ¶¶ 49-51.  Relevant to his minimum wage claim, Mr. Legg alleges that defendants paid him an hourly rate from January 2015 until January 2021, when the defendants began paying Mr. Legg a salary of $250.00 per week, "although it was gradually raised until March 2021," whereupon he was paid $500 per week.  Id. ¶¶ 26, 30-32.  As it concerns the salaried period of Mr. Legg's employment, he claims to have been paid "less than the statutory minimum of $684 per week," pursuant to 29 C.F.R. § 541.600, which exempts certain salaried employees from the overtime provisions of the Act.  Id. ¶ 34.  More generally, Mr. Legg alleges he did not receive "a lawful minimum wage for all hours worked."  Id.  ¶ 51.  As it concerns his overtime claim, Mr. Legg alleges he regularly worked 40 hours per week for which the defendants "failed to pay Plaintiff lawful overtime wages for all hours worked over 40 each week."  Id. ¶¶ 39-40, 50.

Mr. Legg seeks to recover, inter alia, damages and costs, including attorneys' fees "for all violations that occurred within the three years prior to filing of the Original Complaint."  Id. ¶ 53, VII (Prayer for Relief).

The defendants answered the first amended and substituted complaint on June 16, 2022. ECF No. 10. Rule 26(a)(1) disclosures were served by both parties on August 15, 2022. ECF Nos. 14, 15. On September 30, 2022, the plaintiff served his First Set of Interrogatories and Requests for Production of Documents. ECF No. 16.

On February 10, 2023, the parties filed a Joint Notice of Settlement, seeking to stay all deadlines pending finalization of a settlement in principle agreed to by the parties. ECF No. 18. The court denied the request for a stay, but amended the scheduling order to extend deadlines in the case by 60 days. ECF No. 19. On March 22, 2023, the parties filed their joint motion to approve the settlement agreement. Per the terms of the settlement agreement, in consideration for payments of $3,500.00 "representing all unpaid wages allegedly due" and $3,500.00 "representing claimed liquidated damages," the plaintiff agrees, <u>inter alia</u>, to "release, acquit and forever discharge Defendants of and from any and all claims asserted in the Complaint." Settlement Agreement ¶ 6.

Court approval of the parties' settlement agreement is required inasmuch as "the unsupervised waiver or settlement of [FLSA] claims" is prohibited. <u>Taylor v. Progress Energy, Inc.</u>, 493 F.3d 454, 460 (4th Cir. 2007). This is so because a

settlement between an employer and employee cannot "thwart the legislative policy which [FLSA] was designed to effectuate." Brooklyn Sav. Bank, 324 U.S. 697, 704 (1945) (refusing to give effect to a release signed by employees waiving their right to liquidated damages). The minimum wage and maximum hours provisions of FLSA are central to the purposes of the Act, namely, to protect covered employers and employees by eradicating substandard labor conditions. 29 U.S.C. §§ 206 (minimum wage), 207 (maximum hours); see id. § 202 (congressional finding and declaration of policy).

In lieu of a standard adopted by the Fourth Circuit for reviewing and approving FLSA settlements, courts in the Southern District of West Virginia have tended to apply the standard applied by the Eleventh Circuit in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982); Hager v. Omnicare, Inc., No. 5:19-cv-00484, 2021 WL 5311307, at *3-4 (S.D.W. Va. Nov. 15, 2021). The Lynn's Food Stores standard consists of two steps. First, the court reviews the settlement to determine whether it is a "compromise over issues . . . that are actually in dispute." Acosta v. Team Env't, LLC, No. 2:16-cv-03491, 2019 WL 13166725, at *3 (S.D.W. Va. Mar. 4, 2019). Second, the court must determine whether the settlement agreement is fair and reasonable. In evaluating whether a

settlement is fair and reasonable, six factors inform the court's analysis: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel whether expressed directly or through failure to object; and (6) the probability of the plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, together with the injunctive relief designed to assure future FLSA compliance by defendant." Id.

It is clear from the settlement agreement attached to the parties' joint memorandum that they intend to settle both the plaintiff's minimum wage and overtime claims. See Settlement Agreement ¶ 2 ("Plaintiff claims that Defendants failed to pay Plaintiff his proper minimum wage and overtime amounts due under the [FLSA]."), ECF No. 20-1. As contemplated in the parties' proposed settlement, the plaintiff agrees to, inter alia, dismiss his claims with prejudice and release "any and all claims asserted in the Complaint" in exchange for a payment in the amount of $7000.00. Id. ¶¶ 5-6.

Although the plaintiff's minimum wage claim under § 206 of the Act is covered by the express terms of the settlement agreement, this claim is not addressed by the parties in their

joint memorandum, leaving the court with no basis for evaluating whether the settlement of this claim represents a fair and reasonable compromise, in particular, as it concerns the sixth factor concerning "the amount of the settlement in relation to the potential recovery." Acosta, 2019 WL 13166725 at *3.

Accordingly, the parties, either separately or jointly, are hereby ORDERED to provide additional information so as to aid the court in determining whether the settlement agreement represents a fair and reasonable resolution of the plaintiff's minimum wage claim. Information which may aid the court in this respect includes, but need not be limited to, the hourly wage plaintiff claims he should have been paid, the alleged number of hours worked by the plaintiff per week, and the alleged payment amount per hour actually received from his employer during the relevant time period, that is, from February 2019 until January 2021 during which he received an hourly wage, Am. Compl. ¶¶ 30, 53, and from January 2021, when Mr. Legg became "salaried," and therefrom to February 28, 2022, and beyond that date to the extent applicable. See id. ¶¶ 32-34. In so doing, the court understands that there has been little formal discovery in this matter and moreover that the defendants deny having violated any federal law or regulation. See id. ¶ 3.

As it concerns the plaintiff's overtime claim under § 207 of the Act, the court is lacking sufficient information to evaluate the settlement of this claim inasmuch as the parties' joint memorandum addresses it in a general and cursory manner. Respecting this claim, the parties merely state that, "Plaintiff alleges that Defendants failed to pay him an overtime premium which he was owed for hours worked over 40 each week," and further represent that there are disputes as to "Plaintiff's entitlement to overtime wages as well as the number of hours Plaintiff worked per week."  Mem. in Support ¶ 1, 6,  ECF No. 21.  Mr. Legg generally avers that "he worked a significant number of hours over 40 many weeks which should have been compensated at a rate of 1.5 times his regular rate of pay." Id.  The plaintiff estimates he worked "an average of 45 hours per week during his tenure with Defendants."  Id. ¶ 8.f.  Based on this, plaintiff's counsel "calculated Plaintiff's maximum lost wages using his weekly gross pay and an assumed 5 hours of overtime performed each week."  The court understands the time period relevant to this claim to span from February 2019 until February 28, 2022.

With only these general representations and lacking a figure for the amount of overtime wages plaintiff alleges he was owed but not paid, there is little in the parties' joint

memorandum to assure the court that the settlement is fair and reasonable beyond the general averment of counsel that "[u]nder the terms of the settlement, Plaintiff is receiving an amount in excess of these calculated lost overtime wages, including liquidated damages."  Id. ¶ 8.f.

In consideration of the foregoing, the parties are hereby ORDERED to provide a fuller explanation as to why the settlement of the plaintiff's claims is fair and reasonable by providing additional information to the court relating to both the failure to pay minimum wage and overtime as noted above.  The court is unable to approve the settlement of Mr. Legg's claim with the minimal information provided by the parties even under the forgiving standard for approving such settlement agreements.  Acosta, 2019 WL 13166725, at *3 (citing Young v. Act Fast Delivery of W. Va., Inc., No. 5:16-cv-09788, 2020 WL 4805036, at *1 (S.D.W. Va. Aug. 18, 2020)(quoting Brockman v. Keystone Newport News, LLC, No. 4:15-cv-74, 2018 WL 4956514 (E.D. Va. Oct. 12, 2018)).

In view of the foregoing, the court holds in abeyance its decision on the parties' motion pending the filing of supplemental information as ordered herein.  The parties are directed to file the supplemental information by June 20, 2023.

**The Clerk is requested to transmit copies of this order to all counsel of record and to any unrepresented parties.**

**Enter: June 6, 2023**

*[signature]*

John T. Copenhaver, Jr.
Senior United States District Judge