```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON


SCOTT LEGG,

            Plaintiff,

v.                                Civil Action No. 2:22-cv-00111

WRIGHT GROUP, LLC, and ASHLEY
MONIQUE WRIGHT,

            Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending before the court is the parties' Joint Motion for Approval of Settlement, filed March 22, 2023. ECF No. 20. Pursuant to the court's orders entered on June 6, 2023 and June 26, 2023, ECF Nos. 22 and 24, the parties filed a Joint Supplemental Brief and plaintiff filed a Supplemental Exhibit. ECF Nos. 23 and 25.

### I. Background

Plaintiff Scott Legg filed this case on February 28, 2022, seeking unpaid overtime and minimum wages under the Fair Labor Standards Act, 28 U.S.C. § 201, et seq., ("FLSA" or the "Act"), from his employer, Dem 2 Brothers and a Grill II and Adrian Wright. Compl., ECF No. 1. On May 16, 2022, Mr. Legg filed his First Amended and Substituted Complaint, substituting

Wright Group, LLC and Ashley Monique Wright (the "defendants") for Dem 2 Brothers and a Grill II and Adrian Wright.  Am. Compl., ECF No. 7.  Therein the plaintiff alleges the defendants have failed to pay minimum wages and overtime in violation of 29 U.S.C. §§ 206 and 207 of the Act.  Id. at ¶¶ 49-51.

On March 22, 2023, the parties filed a Joint Motion for Approval of Settlement.  Under the parties' settlement agreement, Mr. Legg will receive $7,500.00.  On June 6, 2023, the court held in abeyance its decision on the parties' motion pending the filing of supplemental information about Mr. Legg's minimum wage and overtime claims.  On June 26, 2023, the court ordered the parties to file additional information regarding the requested attorney fee award.  The parties having filed the requested supplemental information, the court considers the parties' motion to approve the settlement.

The basis for Mr. Legg's claims is as follows.  The relevant period spans May 31, 2019 to August 19, 2022.[1]  Mr. Legg avers he worked approximately 30 hours per week from September through February each year and approximately 45 hours per week from March to August each year.  From March to August of each

---

[1] The parties have assumed that the defendants would have prevailed in arguing that the statute of limitations would run from the date of filing of the first amended complaint in May 2022 rather than from the filing of the original complaint in February 2022.

year, Mr. Legg claims not to have been paid overtime wages in accordance with the Act.  As explained below, during the entirety of the relevant period, Mr. Legg received an hourly wage exceeding West Virginia's minimum wage of $8.75 an hour, excepting one week in January 2021.

The following figures are drawn from Mr. Legg's first supplemental filing.  Pl.'s Estimated Damages, ECF No. 23-1.  From May 2019 through December 2020, Mr. Legg was paid an hourly wage of $12.50.  From May 2019 through August 2019, Mr. Legg worked 45 hours a week and received $12.50 per hour.  Thereafter, from September 2019 through February 2020, he worked 30 hours per week at $12.50 per hour.  In March 2020, he again began working 45 hours per week at $12.50 per hour through August 2020.  Beginning in September 2020, his schedule reverted to 30 hours per week at $12.50 per hour.  Inasmuch as Mr. Legg did not receive an overtime hourly wage equal to at least one and one-half his regular hourly rate of $12.50 per hour, each 45-hour workweek caused $31.25 in overtime damages and $62.50 in total damages, including liquidated damages.  Mr. Legg is estimated to have worked 40 45-hour workweeks from May 31, 2019 to January 1, 2021, resulting in estimated overtime damages of $1,250.00 and total damages, including liquidated damages, of $2,500.00.

Beginning in January 2021, Mr. Legg began receiving a "salary." ECF No. 23-1. Starting at $250.00 per week beginning on January 1, 2021, Mr. Legg's salary increased each week until March 5, 2021 when he began to be paid $500.00 per week, which he continued to receive through the week of August 19, 2022. In accordance with his prior work schedule, Mr. Legg worked 30 hours a week from January 1, 2021 to March 4, 2021. Over this nine week period, Mr. Legg's effective hourly wage increased week over week, ranging from $8.33 (January 1, 2021 to January 7, 2021) to $15.74 (February 26, 2021 to March 4, 2021). During the week of January 1, 2021 to January 7, 2021, Mr. Legg's hourly wage of $8.33 fell below the applicable minimum wage of $8.75. This one week period forms the basis of Mr. Legg's minimum wage claim, resulting in damages of $12.50 and total damages, including liquidated damages, of $25.00. Thereafter, Mr. Legg's effective hourly wage exceeded the state minimum wage.

Beginning on March 5, 2021, Mr. Legg again worked 45 hours per week on his $500.00 salary, although now his effective hourly pay rate was $11.11. ECF No. 23-1. Thus, for each of the 51 weeks from March 5, 2021 to August 19, 2022 in which Mr. Legg worked 45 hours and did not receive overtime wages equal to at least one and one-half his hourly wage of $11.11, he suffered

$27.78 in damages and $55.56 in total damages, including liquidated damages, resulting in damages of $1,416.78 and total damages of $2,833.56.

Based on the foregoing, the court calculates Mr. Legg's estimated minimum wage and overtime damages to be $2679.28 and liquidated damages to be $2,679.28 for a total of $5,358.56.[2]

## II.  Applicable Law

Court approval of the parties' proposed settlement is required inasmuch as "the unsupervised waiver or settlement of [FLSA] claims" is prohibited. Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007).

In lieu of a standard adopted by the Fourth Circuit for reviewing and approving FLSA settlements, courts in the Southern District of West Virginia have tended to apply the standard applied by the Eleventh Circuit in Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350 (11th Cir. 1982); Hager v. Omnicare, Inc., No. 5:19-cv-00484, 2021 WL 5311307, at *3-4 (S.D.W. Va. Nov. 15, 2021). The Lynn's Food Stores standard consists of two steps. First, the court reviews the settlement

---

[2] The court notes that plaintiff's figures are different by only a few cents, equaling $2,679.17 and $5,358.33, respectively.

to determine whether a bona fide dispute exists such that the settlement agreement represents a "compromise over issues . . . that are actually in dispute." Acosta v. Team Env't, LLC, No. 2:16-cv-03491, 2019 WL 13166725, at *3 (S.D.W. Va. Mar. 4, 2019).  Second, the court must determine whether the settlement agreement is fair and reasonable.  In evaluating whether a settlement is fair and reasonable, six factors inform the court's analysis:

> "(1) the extent of discovery that has taken place; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel whether expressed directly or through failure to object; and (6) the probability of the plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, together with the injunctive relief designed to assure future FLSA compliance by defendant."

Id.

Section 216(b) of the Act provides, in relevant part, that when a plaintiff prevails, the court "shall . . . allow a reasonable attorney's fee to be paid by defendant."  29 U.S.C. § 216(b).  "[A]lthough neither the FLSA nor Fourth Circuit precedent necessarily requires" district courts to review settled-on attorney fee awards, "courts in the Fourth Circuit tend to evaluate the parties' agreement as to attorneys' fees." Acosta v. Team Env't, LLC, No. 2:16-CV-03491, 2019 WL 13166725, at *3 (S.D.W. Va. Mar. 4, 2019).

III. Analysis

1. Bona Fide Dispute

The plaintiff alleges in his first amended complaint that the defendants willfully and intentionally failed to pay him lawful minimum wages and overtime wages.  Am. Compl. ¶¶ 50-52.  The defendants deny engaging in any unlawful act.  Settlement Agreement and Release ¶ 2.  The parties' settlement agreement and release would resolve both of the plaintiff's claims.  Id. ¶ 6.  Based on the foregoing, the court is satisfied that the settlement agreement represents a "compromise over issues . . . that are actually in dispute."  Acosta, 2019 WL 13166725, at *3.

2. Fair and Reasonable Settlement

The court turns now to the six factors relating to fairness and reasonableness.  As to the first factor -  the extent of discovery that has taken place -  this action remains at a nascent stage.  The parties have conducted no formal discovery, but the parties represent there have been discussions between counsel as well as exchanges of settlement demands and counters, which may fairly be described as informal discovery.  See Mem. in Support at ¶ 8.a.  By foregoing formal discovery, the parties have expended fewer resources and reduced

uncertainties and risks inherent in further litigation. The court is satisfied that the parties have each assessed their likelihood of success at trial based upon their discussions and exchanges of information available to them. The first factor, then, supports approval of the settlement agreement.

The second factor concerns the stage of the proceedings. While this case remains at a relatively early stage, the parties have engaged in informal discovery and settlement negotiations, and quick resolution of this matter without incurring significant additional expenses benefits each of the parties and eliminates the risks and uncertainties that come with trial. On balance, then, the court concludes the second factor favors approval of the settlement.

Considering next the third factor, which concerns the absence or presence of fraud or collusion, the parties assert that they negotiated the settlement at arm's length, having exchanged multiple proposed settlements. In lieu of any representation to the contrary or objection to the proposed settlement agreement, "there is a presumption that no fraud or collusion occurred between counsel." Baust, 574 F. Supp. 3d at 366 (quoting at Davis v. BT Americas Inc., No. 2:16-cv-206, 2017 WL 11506967, at *4 (E.D. Va. May 10, 2017) (quoting Lomascolo v. Parson Brinckerhoff, Inc., No. 1:08-cv-1310 (AJT/JFA), 2009 WL

3094955, at *12 (Sept. 28, 2009)).  In the absence of any contrary representations or objections by the parties, the court finds this factor favors approving the settlement agreement.

The fourth factor focuses on the experience of counsel who have represented the plaintiff.  Here, plaintiff's counsel avers they are experienced in wage and hour claims in federal court and are well equipped to assess the plaintiff's likely recovery were this matter to proceed to trial.  While this may be so, the plaintiff has not provided specific information in support of this representation.  The court thus finds that this factor does not strongly favor the settlement.

Fifth, the court considers the opinions of counsel whether expressed directly or through failure to object.  Here, counsel for both parties represent that the settlement agreement is a fair and reasonable resolution of Mr. Legg's claims.  Counsel for both parties also represent that their clients have been advised about and agree to the settlement agreement.  The court finds this factor favors approval of the settlement agreement.

The sixth factor - the probability of the plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery, together with the injunctive relief designed to assure future FLSA compliance by defendant –

was the focus of the court's June 6, 2023 order, which sought additional information to aid the court in determining whether the settlement represented a fair and reasonable resolution of the plaintiff's minimum wage and overtime claims. The parties' supplemental brief provides a tabulated estimate of the plaintiff's damages for both claims, which the court has discussed above.

The parties jointly represent that the settlement agreement "affords Plaintiff with damages in excess of the damages reasonably available at trial." Based on the figures provided by plaintiff's counsel in their supplemental filing, the court finds this representation to be adequately supported.

The parties also represent that "[h]ad additional discovery taken place, Plaintiff stood a significant chance of receiving documents which substantially reduced the estimated hours worked, and therefore his total damages." Plaintiff's recovery also could be diminished "by competing estimates and testimony, doubt in the quality of his recollection, or evidence that Defendants acted in good faith or without willfulness." Finally, the parties note that settlement resolves this case faster than the plaintiff could have expected were it to proceed to trial. Each of the foregoing are common risks and obstacles to FLSA plaintiffs. Having considered the plaintiff's actual

recovery versus his potential recovery as well as the probability of success on the merits, the court finds this factor favors approving the settlement.

In consideration of the foregoing factors, the court finds the settlement of Mr. Legg's minimum wage and overtime claims, including liquidated damages, at $7,500.00, to be fair and reasonable.

### 3. Attorneys' Fees

The parties seek court approval of a settled-on award of $10,000.00 in attorneys' fees and costs.  The parties represent that the agreement to pay attorneys' fees is separate from the settlement of plaintiff's damages and does not affect the plaintiff's recovery on his minimum wage and overtime claims.  The plaintiff's counsel has provided a supplemental exhibit consisting of time entries of attorneys and paralegals who have worked on Mr. Legg's case.  The plaintiff's counsel claims to have incurred, as of March 22, 2023, $12,750.00 in fees based upon "a blended hourly rate of approximately $259.00" and $402.00 in costs.  Joint Mot. ¶ 11.

The parties reached a mutual agreement as to fees, to which the court gives some deference, and the court approvingly notes that $2,750.00 in billed fees were eliminated from the

$12,750.00 in claimed billed fees. The amount of billed fees having been reduced by the parties themselves, the court finds $10,000.00 to be a reasonable award of attorney's fees, which includes costs of $402.00.[3]

Finally, the court is satisfied that no conflict of interest tainted the settlement agreement. The settlement agreement as to Mr. Legg's claims exceeds Mr. Legg's total claimed damages, and, in the absence of a contingency fee arrangement, which would affect Mr. Legg's overall award, the court discerns no basis for denying the motion to approve the settled-on fee award.

Being satisfied that the settled-on amount of $10,000.00 is the product of a reasonable hourly rate and a reasonable number of hours, as mutually agreed to by the parties, and there was no conflict of interest, the court approves the settlement agreement's provision of an award of attorney's fees, including costs of $402.00, in the amount of $10,000.00.

---

[3] Plaintiff's counsel's time entries are numerous for this, a simple FLSA case, totaling some 27 pages of entries from February 2022 to June 2023, and do not total the hours billed. The settled-on attorney fee award of $10,000.00 divided by the "blended rate" of $259.00 yields 38.6 hours billed to Mr. Legg's matter. The claimed billed fees of $12,750.00 divided by the same blended rate yields 49.2 hours.

## IV. Conclusion

For the foregoing reasons, the court GRANTS the joint motion and approves the settlement.

It is accordingly ORDERED that the plaintiff recover from the defendants the sum of $7,500.00 to be paid to the plaintiff and an attorney fee award, including $402.00 in costs, to be paid by the defendants to counsel for the plaintiff by the payment of $10,000.00 in monthly installments as contemplated by the parties' settlement agreement.

It is further ORDERED that the parties notify the court when the plaintiff has received the $7,500.00 payment awarded and approved herein, at which point the court will dismiss this action.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: July 31, 2023

John T. Copenhaver, Jr.
Senior United States District Judge